May it please the Court, my name is William Kent and I'm arguing this morning on behalf of Maurice Phillips and it's also my privilege to be arguing before this Court in the Third Circuit for the very first time. I thank the Court for that opportunity. Hopefully we don't say anything to you that deters your willingness to come back here. I'd be happy to come back any time, Judge. Well, why don't you see how it goes first? I want to also thank Mr. Wright for his courtesy. He's extended me a number of courtesies since I've gotten into the case and I thank him for that. That's good to hear, Mr. Wright. You're committed to that. I absolutely love it when attorneys, one, not only act civilly, but particularly when the attorneys for the government realize that their role is not just necessarily to get evicted, but to act in a cordial and professional and courteous manner toward opposing counsel. So thank you. Well, he has very much helped me a number of times because this was my first appeal and so I had a and I appreciate his courtesy. The appeal in the Court in its letter or its order instructed me to be prepared to focus on these sentencing questions or the double jeopardy and the Rutledge and Richardson issues. Let me ask this. If you're right about that, what happens to kind of, let's assume the CCE goes away and that, if you're right on the Richardson charge, it seems to me, well, either way, if you're right on the Richardson charge, there's a problem with the CCE conviction and the government seems to be willing to stipulate that if that's the only thing that goes away. But what happens to the sentence here if the CCE disappears because of either a Richardson problem or some other issue in the case? What happens to it? The sentence, the ultimate sentence. What happens? Well, it takes away, if the Court simply vacated the CCE, count two, it would take away one of five life sentences, three of which are consecutive to the other two sentences. So the answer to Judge McKee's question is there isn't any less, right? That's correct. The sentence would still remain a life sentence. Okay. Of course, we do have a combination of Rutledge, Richardson, and Alleyne errors here. It must be the same thing, though, isn't it? The Alleyne argument and the Richardson argument seem to subsume themselves really into the same argument about what happened with the relationship between the 846, I guess it is, and the 848, the conspiracy and the CCE charge. Well, the Alleyne error is simply, well, I'd say simply a sentencing error. As opposed to a judgment. Require re-sentencing would be our argument. As the government's correct, no, they're briefed that, I mean, the Court could still impose a life sentence on re-sentencing after the Alleyne error, whereas the Richardson error requires a vacating of the count of conviction itself. Now, I may seem ungracious myself to not accept the government's concessions, the government's conceded errors to all three of these, Rutledge, Richardson, and Alleyne errors. The government doesn't, seemingly, doesn't challenge the plain error, the double jeopardy of the Rutledge problem is to count one and count two. The government argues there's no plain error as to the Richardson or Alleyne errors. But the government says we'll dispose of that for purposes of judicial economy because it won't affect the real sentence or remain life sentences. We'll simply ask the Court as a remedy to dismiss count two, the CCE, Lee count one, the conspiracy. And that way, judicial economy's implicated because you don't have to deal with the issue of plain error or not. I don't accept the government's concession, though, in terms of remedy because here's my view. You know, this same proposal, in effect, was presented to the Supreme Court in the Rutledge case. And in Rutledge, the government had argued to the Supreme Court that it should be permitted to include in an indictment both the conspiracy and CCE charges so that there would be a fallback conviction if the CCE, for example, the jury didn't reach a guilty verdict on the CCE, there'd be a fallback verdict possible on the conspiracy. And the Supreme Court rejected that. So I think, now, I can't say to the Court that the Supreme Court's holding in Richardson is that when the government does that, that is here, that this Court cannot, as a remedy now in 2014, order the dismissal or vacating of count two and leave count one intact. Rutledge doesn't hold that. But I think it's a fair implication that the Court thought that's not the right way to do it. And the Court suggested, the Supreme Court did in Rutledge, that surely after the Rutledge decision, the courts of appeal wouldn't be faced with these problems in the future. Because the lesson would be learned. Well, do you have any authority for the proposition that both counts ought to be dismissed as a result of Rutledge? Not authority just to Garris directly. But here would be my argument. The way this should have been done was, and of course, I am dealing with plain error, no objection made at the district court. But when the verdict came back guilty on counts one and two, the defense counsel should have objected prior to sentencing to the imposition of sentence. Because that's the double jeopardy violation. Double jeopardy was violated by the imposition of two sentences on counts one and two, even though they were made concurrent. Perhaps with the thought that that somehow solved the double jeopardy problem. The defendant had the right at that time, he had the right to the remedy of the vacating of count one. That's what should have been done. Okay. The count one merged. I mean, clearly, the lesser merges into the greater when there's conviction of a greater and a lesser. So that was the remedy of the defendant and only as a result of, I dare say, ineffective assistance counsel. No objections made by the defense counsel. Was that remedy not elected at that time? It was not a waiver. And it was a forfeiture only by a result of ineffective assistance counsel. If that had happened, then we would come to this court in the posture of count one would be gone. There would be no count one in the appeal. We'd be looking at count two. I'd be making my Richardson objection to count two. Then the question would be, is it plain error or not? I submit it is under the Third Circuit's case law because we don't have, we don't look at the, let me hold that thought on plain error for just a moment. We'd be looking at count two. And if my argument holds that under Richardson, I'm entitled to have count two vacated, then both counts would be gone. Then we'd be left with a question which the Supreme Court said in Rutledge that they were leaving unanswered, which is, does the Court of Appeals have the authority in a situation where there is only the greater count that's going to be vacated because of some challenge? Does the court have the authority to direct a verdict on a lesser? And the Supreme Court said they were expressly leaving that question unanswered. So I'd ask this court to answer that, no, you cannot do that. The government doesn't get to have its cake and eat it too. Because again, this gets back to what the Supreme Court was asked by the government to be permitted to do in Rutledge. Permit us to do just what they did here, put both counts in the indictment, go to the jury on both counts and see what we can get. And the Supreme Court said they rejected that proposal. Then what should the remedy be? The remedy would be this court vacates count one because of the double jeopardy Rutledge violation. It merged into count two, the greater count, the CCE. Then this court accepts my argument. The count two is invalid because of the Richardson problem. Now, that gets us, I think, to the question which the government wants to avoid. Is there is or not plain error as to count to the CCE argue there? It is plain error. And the government argues lack of plain error just because. Not that it is an error, not that it isn't plain, but because it doesn't affect the substantial rights of Mr. Phillips. The government argues that the evidence is overwhelming. Looking at the evidence of the overt acts in count one, which do and I did not challenge the sufficiency of the pleading. The overt acts in count one can constitute the predicate offenses. So the government says there was overwhelming evidence of many of these overt acts. I did, though, note with interest when Mr. Wright responded to a question from you, Judge Thompson, I think that the defense challenged every piece of evidence in this case. I think that's important from just a basic plain error or harmless error analysis. When you look at evidence, was it challenged? I think the Supreme Court says you look to see whether the evidence was challenged, not just whether the evidence was sufficient to convict, but was the evidence challenged? As Mr. Wright himself just said, the defense challenged everything. So all the evidence was challenged. But it's more than that. My view of plain error by looking at the Third Circuit cases and they are. You rightfully point to looking at his substantial rights. Are you saying that this Richardson error, without it, there would have been an acquittal? I'm saying that what this court has to do, the way the court has to analyze whether it's plain error or not, whether it's harmless, is whether there is a functional equivalent. Let me get the exact language, if I may get the quote, Judge. And I'm taking a quote from. I apologize. Here it is. You can send us a 28-J letter. I have it, Judge, and the language is from the United States v. Edmonds, which is 80 Fed Third 810. Now, this was a pre-Richardson case. It was 1996. But the Third Circuit was, as I understand the law of the Third Circuit, was already applying sort of a Richardson analysis. And it said that you don't determine if the error is harmless simply by whether evidence is overwhelming on which a court could speculate that a jury would have convicted or would have reached unanimous verdict on three predicates. But the court, instead, there must be a functionally equivalent fact finding. A functionally equivalent fact finding. That's the phrase I wanted to get exactly right. That's in Edmonds. And the Third Circuit cases that have looked at Richardson errors and determined whether they're harmless or not. Can I ask you a question? Yes. Maybe I'm a little bit confused. We're talking about the government seems to be conceding this Rutledge thing and suggests that the CCE conviction be vacated. Now, you're talking about Richardson. Doesn't that also build? I'm sorry? Yeah. OK. Right. But does Richardson go to the CCE count as well? Richardson is a CCE. OK. Richardson is the case that held Judge Chigaris 1999 that the- Yeah, I know what it is. Right. OK. So it does go to the CCE. Sorry. Then what did the Third Circuit mean? What did this court mean in Edmonds in this phrase, functionally equivalent fact finding? When you look at the cases in the Third Circuit which have addressed harmless error in these what they've required de facto each time, and this is what I argued in my brief, is that there actually have been conviction for substantive offenses. That is the three predicate offenses, the series of related offenses. In order to be harmless error or to flip side be plain error, if it isn't harmless, then there must have actually been substantive count convictions. And we don't have that here. Did you get a look at the Richardson case out of the Fourth Circuit? It seems kind of similar to this. Yes, sir, I did. What was your reaction to that? I disagree with it. OK. And I hope this court will as well. I say because I think that what I, and this is why I point to the language in Rutledge at the Supreme Court because the Supreme Court has given guidance. That wasn't addressed in that Fourth Circuit Richardson case. I don't know if it was overlooked or what, but it was not addressed in the opinion. So I think there are, in the cases I found, U.S. v. Bansal, this was 663, Fifth Third, 634, Third Circuit, 2011. It's another one where they upheld as harmless, the court upheld as harmless because there were predicate act substantive count convictions. Another was Edmonds. I cited the same thing. There were numerous substantive act convictions. In Bansal, there was an instruction that the jury had to unanimously agree on the same predicate act also. You say there was? There was. I believe in Bansal there was. Well, then I'm sorry. You're right, there was not. That's right, there was not. Because I thought that was what they were looking at. And then there was another unpublished, Jackson v. United States, 190 Fed Appendix 207, 2006, from this court. And so all the cases that I found in trying to look at what the Third Circuit has done, the Third Circuit has de facto required. So I think, although the language is not 100% clear in the Edmonds case, what this phrase, functionally equivalent fact finding means, because in all the cases where the court has addressed harmless error in the Richardson context, it has required, it has upheld the conviction as harmless because, and pointed directly to the fact that there were these substantive act predicate convictions. Not simply, as they say, speculating. And they said specifically in Edmonds, that you don't simply look and see that the evidence is overwhelming, that we can speculate a jury would have, would have. That's not good enough. There must be the functionally equivalent fact finding. And they meant by that, I think this court meant, the predicate act convictions. The government can't meet that test here. Therefore, the government cannot show that errors harm us. We have shown that error is plain. It does affect the substantial rights. That's why I suggest the government's going to obviate the issue. Because they would lose on the issue. And this gets back to then, what is the, I think it was in Richardson, that the court said, well, the defendant doesn't have a right to double jeopardy right at a specific point in time. Yes, he does. Yes, he does. That's why you have a right to seek a writ of prohibition. If you didn't have the right to double jeopardy protection at a specific point in time, you would not have a right to an interlocutory appeal, a writ of prohibition to stop, which is what should have been done here. The effective counsel would have done a petition writ of prohibition if Judge Joyner had proceeded over a double jeopardy objection, imposing double punishment on counts one and two. So the defendant does have a right in a, to a specific point in time to the election of that remedy. So there was a case too. I'm looking at a silent court. I don't know. Now, I should think back to Bantzler, because I recall, and I read this late last night, even though we mentioned that there was no instruction on unanimity, as I recall, the record in that case was that there actually was. And I don't know what happened, but the judge actually did instruct, but I don't want to interrupt your argument. Well, Judge, I'm sorry if I got Bantzler wrong. I apologize. No, it was said that, it was decided on the basis that there was no instruction, because I recall, in fact, the record in that case showed that there was an instruction, but I don't want to interrupt your argument and throw you off. I think you're looking at our intent faces just because we're listening to your argument. Well, thank you for the attention. I, I... Doesn't mean we'll agree with it, but we're listening to it. I'm sorry, Judge. Doesn't mean we'll agree with it, but we're listening to it. Well, maybe my Southern charm will appear today. I was arguing once... Southern charm has never really cut it with me. Judge, I can imagine. I, I, I was arguing at the Ninth Circuit once. I forget which judge. I'm getting to the age where I can't remember names. You, you know him, I know. He was in World War II, a Marine. Judge Pragerson. And I, I tried that same line. It got a great laugh. I also had Judge, now I'm drawing this blank there too, but the Chief Judge out there. And... Kaczynski. Kaczynski. Yes. Anybody can make Alex laugh. It's not easy to do. Laugh and also chide me. The argument went over twice our time. But Judge Pragerson said my Southern charm wouldn't get me that far. I said, well, I don't know. I think, though, here, though, I think the argument, though, it's not just a matter of sound. I think that's why the government wished to avoid it by this concession and seek a dismissal account too. These are interesting questions. I would ask the court to write an opinion about this. I think, too, if I... No matter which way it goes? No matter which way it goes, yes, Your Honor. And may I have one more second? Sure, go ahead. You know, I did not challenge the form of the indictment of insufficiency. I think in the Third Circuit case, all the arguments were closed. But, you know, it does seem to me that if the court does write an opinion about this, something should be said about how C.C. accounts should be pled. You know, given Nieder and Cotton, again, I couldn't make it a winning challenge, not even, you know, I think a good arguable challenge. But I think the court should direct that indictments should be written so the defendant is on exact notices to the predicate acts. It should be in the C.C. account. It shouldn't be accomplished or satisfied by simply having overt acts which are in a conspiracy charge. Are you suggesting they should separately charge the predicate acts as separate offenses? That would clean it up. No, sir, that would not be required. But I think the predicate act should at least be expressly set forth in the C.C. account. And then it would be clear. And perhaps a pattern jury instruction, if not already, covers this, should explain that the court should instruct that there must be unanimity as to the predicate acts. Thank you, Your Honor. Okay. Thank you, Mr. Henn. Did you reserve time, sir? I'm sorry. I'm sorry. Did you reserve any time for rebuttal? Oh, I meant to, but I forgot. I got carried away. Okay. All right. If I may. Sure. Your Honor, Rutledge doesn't provide that the government has to make a choice in its charging decisions as to whether to charge a C.C.E. to the exclusion of conspiracy against someone. They have different elements. You may not be able to make all the elements of the C.C.E., even though you think so when you present the case in front of the grand jury. What Rutledge actually deals with is double jeopardy within the context of cynicism. Well, how could you get a, how could you prove a C.C.E.? Well, I guess you could prove a C.C.E. Well, I don't know if you could. Could you prove a C.C.E. without proving an underlying conspiracy? Because the in concert with, I wonder if you can show in concert with, that was the without showing something which is tantamount to a conspiratorial agreement, or can you? I don't think you can. I think that you have to prove a conspiracy in a sense. You have to prove a conspiracy. Clearly, if you have a conspiracy, you've got in concert. I don't take issue with the idea or the notion that a conspiracy is a lesser included offense and that you shouldn't get punished twice. But that's what we're actually talking about when we talk about double jeopardy in this circumstance. We're talking about, we're talking about sentencing. That in fact, it is a lesser included offense and you're being sentenced twice for the same conduct if the government in fact makes the C.C.E. Now, there could be circumstances where you have a C.C.E. that is charged and you can't prove, and you have a conspiracy that's charged and that, you know, King, purported Kingpin X is charged in both and you can't prove that there were five people. But that doesn't make him any less guilty of the conspiracy. Now, the conspiracy, at least in my view, doesn't, just doesn't go away. I mean, you still in fact have, in this case, especially if you had a circumstance where you had a jury that considered both independently with correct jury instructions with regard to the conspiracy and convicted Mr. Phillips of both. And it just doesn't disappear because there was a mistake as to the jury instruction with regard to that issue. Okay, so you're saying that the failure to give the individual instruction on count two has, as I said, parallel universes. It has nothing to do with the conspiracy in count one. That is correct. And the jury in fact looked at, they had the correct jury instructions. They viewed the conduct and they convicted Mr. Phillips of the conspiracy. And then they said, not only that, but he had five or more people who he was working with. And it was, and it was more than 150 keys. It was more than 500 times, what is it, 841, 1B1, I think, or B1, 500 grams. It was more than 300 times the 500 grams that was the threshold under 21 U.S.C. 841. And so we convicted him of that despite the fact that we didn't convict, you know, despite the fact that there was a, there was a defect in the jury instruction and they didn't have, didn't have a decent interrogatory, didn't tell them that they had to find three predicate acts unanimously and they had to agree on those predicate acts. But it just doesn't, it just doesn't disappear. Now we got into a discussion about, about harmless error. But when you look at, I suggest that when you look at what the Seventh Circuit did in the Eddie Richardson as opposed to the Fourth Circuit's, we'll call him Nate, but Nathaniel Richardson case, with regard to the, to the Eddie Richardson case, the Seventh Circuit just took a common sense approach. And it in fact said that there's no net gain because no matter what, there's no net effect on, with regard to the sentence because no matter what, you're going to have to get rid of one of the sentences. And what the government suggests here is, is that this court take that common sense approach because one of the things that you do is that you eliminate the Elaine problem. You eliminate the Elaine problem because there aren't any issues with regard to a mandatory minimum being increased based on elements that work with the jury when you look at count one of the indictments, which was the conspiracy charge. And so it just makes sense. Now we had a discussion with regard to harmless error. The reality is, is that there was no plain error in this case because the evidence with regard to Mr. Phillips' drug activity was overwhelming. It was, there was evidence of a eight year, that it went on for eight years. You had witness after witness after witness who worked for him say that he provided me with, what did Harris say, 10 kilograms every other week for life. I mean, that's an exaggeration. But in hundreds, not hundreds of thousands, but literally millions of dollars were involved with, were involved in this conspiracy. He received millions of dollars. There was testimony that when they were counting drugs, that he would, they were counting drug money that he would instruct individuals to take out, to take out every hundred dollar bill because that was his retirement fund and that it has over $10 million in it. Unfortunately, we haven't been able to locate all of that $10 million, but so there was a huge drug conspiracy. There were just a plethora of activity during that timeframe. And in light of that, even though there was error, the error was plain, it would not have affected the outcome. With the overwhelming drug activity that was involved in this conspiracy, there was no, there was no plain, there was no plain error. The jury certainly would have found and unanimously agreed on, on three, on three acts. But that being said, that being said, there's no reason to, there's no reason to do that. And that's the same analysis because when you talk about the Nathaniel Richardson case, they talked about not only in terms of plain error, but also said with regard to harmless error, that either way they were, if I remember correctly, I hope I'm not wrong on that. I hope I'm not getting my Richardson's confused. But I think that in the, in the Fourth Circuit Richardson case, it said that there was no plain error. And even if there was, and even so, if there was error, it was harmless. What about our Césaire opinion that Judge Key mentioned? I'm not, you know, I'm embarrassed, but I'm not familiar with it. If you could refresh my. Well, folks are not familiar with my opinion. I'm willing to address it if you would, if you didn't like me. I'm embarrassed that I don't, I can't, I can't speak to that intelligently. It's okay. But with regard to, and my apologies to the court. But with regard to, but regard to this, again, it's just simply a common sense approach. That makes sense under these circumstances. And it also gives effect to the will of the, of the jury, who sat there for three months and listened to this evidence and reached the conclusion. And it doesn't change the sentencing. If, in fact, we, if, in fact, we went the other way, because I, because it wasn't plain error. I mean, if you look at it and you look at the breadth of this, it wasn't plain error. But then that would mandate another sentencing hearing. And then we'd have to look at evidence in terms of Alain. We'd at least have to have an Alain, a new sentencing hearing on the Alain issues. And, and I suggest to the court. And that only goes to count two, right? The CCE. That goes to the C, that's why that goes to the CCE count, where we have to put on evidence to show beyond. And, and we wouldn't have a difference here. And so for those reasons, that's why we believe that the Seventh Circuit's conclusion is a, is a common sense approach that makes sense in this case. Unless you have any other questions, except with regard to this Assayer case, I'm willing to answer anything that I. May I ask something? Sure, absolutely, absolutely. The seizure of the half million dollars. Yes, Your Honor. New Carrollton, February 9th, 2006. Yes. What significance did that have? And what happened to that money? What happened to the money ultimately? It was seized. It was seized and it got distributed. I mean, the government took the money ultimately. And it was not, it wasn't challenged. To me, the entitlement of the government to that. To the $599,000? Yes. That was, well, it was drug, they were, they were the. I mean, I know, the dog sniffed it. Right, but they were involved, it was, they were involved in drug, it was money that was a result of drug trafficking activity. It was being used. So because it sniffed drugs, the money was seized? Because that's in, in essence, yes, yes. And that was, of course, before, those were other law enforcement entities that were involved in that activity prior to the United States Attorney's Office getting involved in the investigation and prosecution of this case. So it was, from our perspective, evidence of the, of Mr. Phillips' crimes and his participation in drug trafficking activity. And so that's, so that's what happened with regard to the money. But whether they, in fact, had a right initially to make the investigatory stop and to seize the money, we certainly did. They certainly did. Well, you're right, you're right. Yeah, yeah, that's basically the dog sniffed it. They thought under the totality of the circumstances that it was indicative of drug trafficking activity, and so it was seized by local authorities. And also, I think ICE wasn't. I think, I think Immigration and Customs Enforcement was involved, too, in the District of Maryland. Judge Becker was fond of citing a law review article that says, it's old, that the proliferation of drugs in this country is so great, especially in the South Florida region, that a well-trained drug would alert to 90 percent, I think it was 90, maybe 95 percent, but I'll say 90 percent of all the currency in circulation in the United States. That's neither here nor there, but I was just fascinated. I don't know of any study that's been done as a follow-up to corroborate the initial study that was written up in that law review article. Well, if I may say this respectfully, Your Honor, with, Your Honors, with regard to the, with regard to the money, regardless of whether it was seized, it was still valuable evidence in relationship to the overall conspiracy that was charged in this case, simply because he possessed it. He got it from, under curious circumstances, from the trunk of someone who the evidence showed, I believe Sean Green's nickname was Head. The evidence, in fact, that was presented at trial showed that Mr. Phillips provided cocaine in large amounts to Mr., to Sean Green, who was also known as Head, and he had done that for some time, and that was one of the outlets for the cocaine that was being trafficked by the, by the Phillips Cocaine Organization. So the fact that he received this large amount of money from, from Mr. Green was, was very probative and corroborative of the relationship that was testified to by the witnesses between Mr. Green and, and Maurice Phillips. Now, whether it was right or wrong to actually seize it based on the dog sniff, I don't take a position on that, Your Honor. I'm not, I don't take a position on that. But as far as our evidence in this case, that's where it fit in. If even, and that wouldn't change regardless of whether they had just taken photographs of it and, and driven and said, be on your way, which is what Mr., Mr. Phillips was actually ultimately on his way. But that doesn't, so I just want to put into context why that money fit into our case, and that would have, that would have been the case regardless of whether it was seized, regardless of whether it was seized, Your Honor. Thank you, Mr. Green. Thank you. Thank you, Your Honor. Mr. Green, you didn't, you didn't reserve any rebuttal. With the indulgence of my clients, or my clients, my colleagues. That's why, if you could just come up for a second, I have one question. And that is, I want to make sure I understand your argument as to why if count two goes away, count one, unless, as in some other infirmity, that count one also presents a problem, it's assumed that, that count two goes away, so there's no Richardson issue, Mr. Wright is right, that is correct, that the Eileen, Eileen issue is tied totally to count two. We've got a conviction based upon a few months trial that Mr. Wright has represented, with an awful lot of evidence of a conspiracy as charged in count one. Why does count one's continuing vitality have anything whatsoever to do with count two? I'm not sure I understand your argument on that. Um, well, my argument. I don't see Rutledge being the answer to that question. Is that there's a, there is a time element to the Fifth Amendment protection, and I'd call it common sense too, because the time element is what the Fifth Amendment's protecting you against is the dual punishment. And the dual punishment happened in this case when he was sentenced on both counts. But you're suggesting no punishment, right? At least as to counts one and two. Ultimately, that's just, that's how it works out, because the government had the error in count two. I'm not saying as a result of his double jeopardy claim he's entitled to no punishment, but he's got two separate remedies for two separate wrongs. The one wrong, and it's a question of timing, as I point out through his right of writ of prohibition, had a right to not be punished there at sentencing on count one. He had a right to have count one vacated at that, prior to the sentencing. That was his remedy for that double jeopardy wrong. Well, why wouldn't the remedy be just the dismissal of count two? Why wouldn't that fix it? Because count one is still, that's what I'm missing. Your argument is appealing to me, but I can't find the logic behind it. Well, just as the government itself said in its brief, and they use this phrase, I think the ordinary or the normal remedy is that you vacate the lesser rule. Of course it is, because you don't, the nature of merger, and because the legal doctrine that's at play here is merger, it's what the courts have said. The lesser merges into the greater. The greater doesn't merge into the lesser. That's what he's saying, right. And so the lesser has to merge into the greater, and that happened as a matter of law under the Fifth. But in Rutledge, the court simply said one of the convictions had to be vacated. Yes, Judge Thompson, I acknowledge that. The language is not precise as it should have been, but we also know in Rutledge, as I say, and I think I'm right in my quoting of Rutledge, that the court rejected the government's decision-making here, which apparently the government succeeded on remand in the Seventh Circuit and prevailing on, that the government shouldn't be able to have its cake and eat it too. The government shouldn't be able to go forth on both charges, because you know up front there's a double jeopardy problem. And so the government's, this remedy is not one that the Supreme Court endorsed. And so now the remedy, if there would be one, Judge McKee, would be, does the court have the power to direct a verdict then on the lesser, even if it had been? So let's say, Mr. Kent, you're right. You're at least half right. Mr. Phillips was entitled to have count one vacated prior to sentencing as a double jeopardy remedy. That's fine. It's gone. But you know what? We can reinstate it. We can direct a verdict on the lesser. But this is where I point to the Supreme Court said they left that question open. Does the court have the power, I mean, under the Sixth Amendment, under the Fifth Amendment, can a court direct a verdict on the lesser that we don't have a verdict from the jury? I guess what's troubling me, and I've got to go back and read Brutlidge again, but 846 and 848 seem like very unique kinds of applications of the whole Brock Berger double jeopardy. Yes. Because as I said earlier, I don't know how you can distinguish between a concert and agreement. The court said you really can't. It seems like two different sides of the very same coin. So the traditional way of saying one merges into the other and that makes it worse. I'm just not sure it works there. Because it's really the same offense, it seems. It's ironic that we're hearing that. I don't know how the name is pronounced, but just Marissa Maris's courtroom, because I understand Judge Maris is notable for a number of things, including the rewriting of the Federal Criminal Code, Title 18, Title 28, Judiciary Code. So it's too bad we don't have Judge Maris to call on here to answer this. But Judge, I do think, though, that all the case law speaks in terms of double jeopardy. You're speaking of merger, the merger of the lesser and the greater. He had the right to that remedy prior to sentencing. Count one would be gone. And then the question only remains, I believe, the remaining question, which is unanswered by the Supreme Court. Does this court have the power against the defendant's right to indictment, jury verdict, prove beyond a reasonable doubt? Does this court have the power to direct a verdict on a lesser? That's an interesting question. Well, thank you very much. We'll take the matter under advice. I want to thank, again, counsel for a very helpful argument. Mr. Kent, you have a very, speaking for myself, you have a very pleasing mannerism that, and I'm not crediting this to slogan charm, which I still frankly reject as a principle. It's a historical fallacy. Yes, sir. I apologize for bringing out the- But you have a very pleasant mannerism.